## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KASHEEM BASS,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO.  24-3419** |
| | : | |
| **DELAWARE COUNTY** | : | |
| **DOMESTIC RELATIONS,** *et al.*, | : | |
| **Defendants.** | : | |

### MEMORANDUM

**MURPHY, J.**                                                                           **October 29, 2024**

Currently before us is a motion to proceed *in forma pauperis* and a civil complaint filed

by plaintiff Kasheem Bass that raises claims against "Delaware County Domestic Relations"

(DCDR) and others asserting that his constitutional rights have been violated in connection with

child support proceedings.  DI 1, 2.  For the following reasons, we will grant Mr. Bass leave to

proceed *in forma pauperis* and dismiss his complaint upon screening.  Mr. Bass's federal claims

will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a

claim, and Mr. Bass's state law claims will be dismissed without prejudice.

### I.      FACTUAL ALLEGATIONS[1]

Mr. Bass filed this civil action pursuant to 42 U.S.C. § 1983 against DCDR and a DCDR

caseworker, Dakota Street, noting that each of these defendants are being sued in their official

capacities.  DI 1 at 1-2.  Mr. Bass also names Montana Street as a defendant, noting that she "is a

recipient of child support payments."  *Id.* at 2.  Mr. Bass's claims appear to reflect his

dissatisfaction with rulings made during child support proceedings.  Generally, Mr. Bass alleges

---

[1] The factual allegations set forth in this memorandum are taken from the complaint and
the exhibits attached thereto.  *See* DI 2.  We adopt the sequential pagination assigned to the
complaint by the CM/ECF docketing system.

that Montana Street "abused process and filed a child support order, with the intent to do harm and achieve an ulterior purpose" with DCDR "where she has family members employed" causing him "financial burden and mental anguish. *Id.* Mr. Bass also alleges that DCDR "violated his constitutional rights" by denying his request for change of venue thereby "compromising the integrity, fairness, and impartiality of the proceedings." *Id.* at 2-3.

Mr. Bass alleges that Montana Street, with whom he shares a son, filed a complaint for child support with DCDR on April 27, 2022. *Id.* at 3. Mr. Bass contends that this was done to delay his relocation to North Carolina and as an act of "revenge" because Mr. Bass was seeking partial custody of their son. *Id.* Mr. Bass claims that Montana Street's actions have "violated [his] civil rights" and caused him "significant financial burden." *Id.*

Mr. Bass asserts that DCDR deprived him of a "fair and impartial hearing" on May 18, 2022, by failing to consider the "valid custody agreement between the parties" and the evidence he presented to show that the support order filed by Montana Street was an act of revenge. *Id.* at 3-4. He also contends that he was forced to hire an attorney on July 5, 2022, to facilitate the child support payment process because "Judge Bonner, refused to accept [] a check that [Bass] brought to make payment" and "issued [] a hearing for contempt" against Mr. Bass. *Id.* at 4.

On January 27, 2023, Mr. Bass appeared before DCDR Hearing Officer Martinez who allegedly "made inappropriate and prejudicial comments" to him and "violated [his] rights to due process" when he denied Mr. Bass's request for modification of support. *Id.* at 4. Mr. Bass contends that Martinez's comments "showed favoritism to the other party" and violated his constitutional rights by "depriving [him] of a fair and impartial hearing." *Id.* On February 2, 2023, Mr. Bass requested a "change of venue" based on his beliefs that there was a conflict of interest and lack of impartiality because Montana Street's brother (a bench warrant supervisor)

and sister (a caseworker) both worked for DCDR.  *Id.* at 5.  His request for a change of venue was denied, and he contends that this decision deprived him of his constitutional rights "because a conflict of interest was not prevented."  *Id.*

Mr. Bass alleges that Dakota Street, "in her capacity as a Delaware County Domestic Relations Caseworker," filed a petition for contempt against him on March 14, 2023, and filed a second petition for contempt against him on July 5, 2023.  *Id.*  Mr. Bass asserts that the contempt petitions were filed against him "in retaliation for the obliteration of character, suffered by" Montana Street during a March 6, 2023 custody proceeding which resulted in Mr. Bass being awarded more time with their son.  *Id.* at 6.  Mr. Bass avers that by filing the "repeated" contempt petitions, "Defendant" breached "their fiduciary duty" and "violated code of conduct and employee ethical standards."  *Id.* at 5-6.  He also asserts intentional infliction of emotional distress.  *Id.* at 6.

On April 4, 2023, Mr. Bass and Montana Street attended a contempt hearing before DCDR Judge Love.  *Id.* at 7.  After Montana Street advised Judge Love that her income had decreased, Judge Love entered a new support order requiring Mr. Bass to pay more child support.  *Id.*  Mr. Bass contends that the "entry of the new support order constitute[d] a violation of due process."  *Id.*

During an August 14, 2023 DCDR hearing, Mr. Bass learned that enforcement of the child support order was being transferred to North Carolina, but he asserts that DCDR failed to transfer the enforcement as represented, thereby "breaching the contract formed" during the hearing.  *Id.*  Mr. Bass allegedly received another contempt petition in January 2024, and a hearing was scheduled for January 26, 2024.  *Id.*  He avers that he traveled back to Delaware County to attend the contempt hearing and request all documents in his file.  *Id.* at 7-8.

Mr. Bass appeared at DCDR on January 26, 2024.  *Id.* at 8.  Instead of a hearing, he allegedly was met by a DCDR supervisor named Janice Wallace and a "Delaware County Park Police Officer."  *Id.*  Wallace asked Mr. Bass to "sign some papers" but Mr. Bass refused because "he had no knowledge of what she was telling him to sign."  *Id.*  Ms. Wallace explained that she was trying to help him avoid arrest because he hadn't paid his "support since last year." *Id.* at 8-9.  Mr. Bass explained that "he was unemployed and in and out of the hospital a few months back [in] the summer of 2023."  *Id.* at 9.

On March 6, 2024, Mr. Bass appeared before DCDR Judge Bonner for a support modification proceeding.  *Id.*  Mr. Bass raised "conflict of interest and ethical concerns" concerning Dakota Street's involvement, but Judge Bonner refused to terminate the child support order.  *Id.*  Mr. Bass contends that Judge Bonner demonstrated bias against him, causing Mr. Bass to suffer mental anguish and depression.  *Id.*  On May 10, 2024, Mr. Bass again attempted to challenge the validity of the support order before DCDR Judge Lowe, again asserting a conflict of interest between Dakota and Montana Street.  *Id.*  Rather than terminate the support order, Judge Lowe "threatened to arrest" Mr. Bass for noncompliance with the child support order and held Mr. Bass in the courtroom until a payment was made.  *Id.* at 9-10.  Mr. Bass alleges that the actions of Judge Lowe caused him severe mental anguish, emotional distress, and depression.  *Id.* at 10.

Mr. Bass asserts due process violations, breaches of fiduciary duty and contract, negligence, retaliation, and intentional infliction of emotional distress.  *Id.* at 11.  He contends that DCDR caseworker Dakota Street had a "duty of loyalty[] to exercise reasonable case in avoiding conflicts of interest" and that she and DCDR were negligent in failing to prevent a conflict of interest and in denying Mr. Bass's change of venue.  *Id.* at 10.  Mr. Bass contends that

he has suffered damages including emotional distress, mental anguish, and depression. *Id.* at 10-11. He seeks, *inter alia*, monetary damages, a declaration that his constitutional rights have been violated, and termination of the child support order.

## II.   STANDARD OF REVIEW

We will grant Mr. Bass leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires us to dismiss the complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires us to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Mr. Bass is proceeding *pro se*, we construe his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Furthermore, when allowing a plaintiff to proceed *in forma pauperis*, we must review the pleadings and dismiss the matter if we determine, *inter alia*, that the action fails to set forth a

proper basis for subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III.    DISCUSSION

Mr. Bass asserts claims for constitutional violations against the DCDR, a state official (Dakota Street), and a private citizen (Montana Street).  He seeks a declaration that his constitutional rights have been violated, monetary and punitive damages, and termination of "the child support order, with arrears, without prejudice."  DI 2 at 11.

The vehicle by which federal constitutional claims may be brought in federal court against state actors is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.  Constitutional Claims Against DCDR

Mr. Bass's § 1983 claims against DCDR must be dismissed.  We take judicial notice that "the Domestic Relations Department of Delaware County . . . serves as the county's child support enforcement agency under the supervision of the Court of Common Pleas."  *See*

https://delcopa.gov/courts/domesticrelations/ (last viewed Oct. 4, 2024).  The Eleventh

Amendment bars suits against a state and its agencies in federal court when the state has not

waived that immunity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  The

Commonwealth of Pennsylvania has not waived that immunity for civil rights claims.  *See* 42 Pa.

Cons. Stat. § 8521(b).  Pennsylvania courts, their administrations, and divisions of state courts,

such as domestic relations sections, are arms of the Commonwealth and therefore share in the

Commonwealth's immunity.  *Benn v. First Judicial Dist. of Pa*., 426 F.3d 233, 241 (3d Cir.

2005) (holding that Pennsylvania's Judicial Districts are entitled to immunity from suit under the

Eleventh Amendment); *Galvani v. Pennsylvania*, 329 F. App'x 344, 346 (3d Cir. 2009) (*per

curiam*) ("The District Court correctly determined that the Commonwealth and the [District

Court Administration of York County] enjoy Eleventh Amendment immunity from suit in

federal court."); *Custis v. City of Philadelphia Ct. of Common Pleas*, No. 21-3573, 2021 WL

3784257, at *4 (E.D. Pa. Aug. 26, 2021) (concluding that the Domestic Unit of the Philadelphia

Court of Common pleas, as a division of a state court, "may not be sued under § 1983").

Moreover, Pennsylvania courts and their divisions are not considered "persons" subject to

liability under § 1983.  *See Karns v. Shanahan*, 879 F.3d 504, 519 (3d Cir. 2018) (noting that

"'[s]tates or governmental entities that are considered "arms of the State" for Eleventh

Amendment purposes' are not 'persons' under § 1983" (quoting *Will*, 491 U.S. at 70)).  For these

reasons, Mr. Bass cannot state a § 1983 claim against DCDR.  *See Green v. Domestic Rels.

Section Ct. of Common Pleas Compliance Unit Montgomery Cnty*., 649 F. App'x 178, 180 (3d

Cir. 2016) (*per curiam*) ("[A]ll claims against the Domestic Relations Section of the

Montgomery County Court of Common Pleas were properly dismissed pursuant to its Eleventh

Amendment immunity.").

### B. Constitutional Claims Against DCDR Caseworker

Mr. Bass has not stated a § 1983 claim against Dakota Street, whom he alleges is a caseworker employed with DCDR.  DI 2 at 2.  According to the allegations of the complaint, Dakota Street has been sued "in her capacity as a Delaware County Domestic Relations Caseworker," *see id.* at 5, specifically with respect to the issuance of two contempt petitions against Bass.[2]  *Id.* at 5-7, 9-10, DI 2-1 at 7, 10.  As such, any claims against Dakota Street for her actions in implementing and enforcing a child support order will not survive screening because she is entitled to quasi-judicial immunity for such actions.  *See Baquero v. Mendoza*, 828 F. App'x 137, 140 (3d Cir. 2020) (*per curiam*) ("[W]e agree with the District Court's conclusion that defendants . . . are entitled to quasi-judicial immunity for their roles in implementing and enforcing child support orders"); *Lepre v. Tolerico*, 156 F. App'x 522, 525 (3d Cir. 2005) (*per curiam*) ("However, these defendants, all of whom are officers of the Domestic Relations Section of the Family Court of Lackawanna County, are entitled to quasi-judicial immunity for their actions in filing the Petition enforcing the Family Court's support order in accordance with Pennsylvania Rule of Civil Procedure 1910.25." (citing *Gallas v. Supreme Court of Pennsylvania,* 211 F.3d 760, 772-73 (3d Cir. 2000) and *Lockhart v. Hoenstine,* 411 F.2d 455, 460 (3d Cir. 1969)))·  The scope of quasi-judicial immunity extends to court personnel, such as domestic relations staff attorneys and hearing officers, "who perform discretionary, and

---

[2] Official capacity claims against state officials are really suits against the Commonwealth, and as such, are also barred by the Eleventh Amendment.  *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will*, 491 U.S. at 70-71.  However, we will liberally construe the complaint to assert claims against Dakota Street in her individual capacity as well.  *See Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed even though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

adjudicative functions under the guidance and direction of the courts." *See Blackwell v. Tierney*, No. 21-1904, 2022 WL 19778, at *4 (W.D. Pa. Jan. 3, 2022) (citing *Slawek v. White*, No. 91-1164, 1992 WL 68247, at 3-4 (E.D. Pa. 1992); *Buchanan v. Gay*, 491 F. Supp. 2d 483, 494 (D. Del. 2007) (judicial immunity extended to contract attorney appointed to represent the interest of the minor child); *White v. Green*, No. 09-1219, 2009 WL 2412490, at *3 (E.D. Pa. 2009) (absolute judicial immunity extended to "those nonjudicial officials whose activities are integrally related to the judicial process and involve the exercise of discretion comparable to that of a judge"); *Johnson v. Lancaster County Children and Youth,* No. 92-7135, 1993 WL 245280 (E.D. Pa. 1993) (state social service workers performing prosecutorial functions are entitled to absolute immunity).

Dakota Street is immune from suit because the claims against her arise out of her duties for DCDR, specifically, implementing and enforcing child support orders.  Such immunity is not rendered a nullity even if she made a mistake or improperly discharged those duties.  *See Lewis v. W. Roxbury Dist. Court*, No. 12-11544, 2013 WL 4854117, at *6 (D. Mass. Sept. 10, 2013) (dismissing § 1983 claim on quasi-judicial immunity grounds where the plaintiff alleged that the court clerk (1) failed to record his criminal case history accurately and (2) ignored his request to obtain documents and recognizing that the plaintiff sought "to hold the Court Clerk liable for improperly discharging her duties" that arose "directly from the Clerk's role in supporting the adjudication of cases" and were "inextricably intertwined with the judicial function"); *see also Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987) (stating that "[c]ourt clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process," and that "a mistake or an act in excess of jurisdiction does not abrogate judicial immunity, even if it results in 'grave

9

procedural errors'"). Accordingly, any constitutional claims asserted against Dakota Street are dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).

### C. Constitutional Claims Against Montana Street

Mr. Bass asserts that on April 27, 2022, Montana Street filed a complaint with the DCDR seeking child support. DI 2 at 3. Mr. Bass asserts that Montana Street violated his "civil rights, to be free from retaliation." *Id.* Mr. Bass cannot maintain federal constitutional claims against Montana Street because she is not a state actor for purposes of § 1983. *See, e.g., Hepfl v. Boot*, No. 21-64, 2021 WL 1701801, at *2 (W.D. Pa. Apr. 8, 2021), *report and recommendation adopted*, 2021 WL 1700043 (W.D. Pa. Apr. 29, 2021) (dismissing *pro se* plaintiff's § 1983 claims against his ex-girlfriend (and the mother of his child) on the basis that she was a private individual and not a state actor); *Massey v. Crady*, 2018 WL 4328002, at *6 (W.D. Pa. Aug. 8, 2018) ("Private citizens . . . are not state actors, and therefore . . . any § 1983 claims against [them] should be dismissed."); *Brett v. Zimmerman,* No. 15-2414, 2018 WL 6576412, at *6 (M.D. Pa. Nov. 2, 2018) (recommending dismissal of § 1983 claims against private individual as frivolous), *report and recommendation adopted*, 2018 WL 6567721 (M.D. Pa. Dec. 13, 2018); *Toroney v. Woyten,* No. 86-4871, 1986 WL 11081, at *1 (E.D. Pa. Oct. 3, 1986) (dismissing §1983 claims against private actor as frivolous). Accordingly, any federal constitutional claims asserted against the Montana Street must be dismissed with prejudice.

### D. State Law Claims

Mr. Bass brings assorted tort claims pursuant to Pennsylvania law against the DCDR and Dakota Street. DI 2 at 10-11. Mr. Bass's state law claims for damages against DCDR and Dakota Street in her official capacity, like his constitutional claims, are barred by the Eleventh Amendment. *See, e.g.*, *Bryant v. Allegheny Cnty. Domestic Relations Section*, No. 10-1272,

2011 WL 5326051, at *1  (W.D. Pa. Nov. 3, 2011) (dismissing state tort claims against the Court

of Common Pleas Family Division as barred by the Eleventh Amendment); *Freeman v. Miller*,

No. 3:10-cv-1545,  2011 WL 4591974, at *15 (M.D. Pa. Sept. 30, 2011) ("Freeman's damage

claims brought against Defendants in their official capacities are considered to be against the

state itself and are barred by the Eleventh Amendment."); *Kidd v. Pennsylvania*, 37 F. App'x

588, 592 n.3 (3d Cir. 2002) (summarily dismissing intentional infliction of emotional distress

claim because "[t]he Commonwealth, it subdivisions, and its employees acting within the scope

of employment enjoy Eleventh Amendment immunity in federal court.  The Pennsylvania

legislature has not chosen to waive this immunity for intentional torts." (citation omitted)).

Furthermore, Pennsylvania law provides agencies, officials and employees of the

Commonwealth acting within the scope of their duties with sovereign immunity from most state

law claims, subject to exceptions not applicable here.  *See* 1 Pa. Cons. Stat. § 2310 (affirming

immunity for Commonwealth officials and employees); 42 Pa. Cons. Stat. § 8521 (limiting

waiver of immunity to specific exceptions); *id.* § 8522 (setting forth limited exceptions);

*Stackhouse v. Pa. State Police*, 892 A.2d 54, 58 (Pa. Commw. Ct. 2006) ("Generally, the

Commonwealth and its agencies, officials and employees acting within the scope of their duties

are immune from suits for damages."); *see also Pew v. Sherman*, No. 21-949, 2023 WL

8113270, at *5 (M.D. Pa. Nov. 22, 2023) (concluding that defendants were entitled to immunity

from claims that they failed to protect plaintiff from assault).

State sovereign immunity extends to state employees in their official and individual

capacities, working within the scope of their employment.  *See Kintzel v. Kleeman*, 965 F. Supp.

2d 601, 606 (M.D. Pa. 2013) (citing *Maute v. Frank*, 657 A.2d 985, 986 (Pa. Super. 1995)).

Further, "a state officer is shielded from liability for intentional torts committed while acting

11

within the scope of his duties." *Bracey v. Betancourt*, No. 20-6205, 2021 WL 5112246, at *7 (E.D. Pa. Nov. 3, 2021); *see also Poteat v. Lydon*, No. 22-2114, 2023 WL 6620368, at *3 (3d Cir. Oct. 11, 2023) (*per curiam*) ("State sovereign immunity bars these suits against the Commonwealth and its employees acting within the scope of their duties . . . and the limited negligence exceptions to sovereign immunity do not apply as Poteat alleged only intentional torts.").

Mr. Bass asserts that Dakota Street, by filing petitions of contempt against Mr. Bass in her role as a DCDR case worker, breached her fiduciary duty, intentionally inflicted emotional distress, and failed to exercise reasonable care in avoiding a conflict of interest. DI 2 at 6-10. To the extent Mr. Bass brings these claims against Dakota Street in her individual capacity, we will dismiss them as barred by sovereign immunity.[3] *See Horseman v. Walton*, No. 22-336, 2023 WL 1864882, at *2 (M.D. Pa. Feb. 9, 2023) ("Horseman's state law claims for assault, battery, conversion, intentional infliction of emotional distress and violation of DOC policies are accordingly barred by sovereign immunity").

To the extent Mr. Bass asserts state law claims against Montana Street, we cannot exercise diversity jurisdiction.[4] Matters of child custody must instead be handled in state court. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (concluding "that the domestic relations exception, as articulated by this Court since *Barber* [*v. Barber*, 62 U.S. 582 (1858)], divests the federal courts of power to issue divorce, alimony, and child custody decrees"); *Matusow v. Trans-Cnty. Title Agency, LLC*, 545 F.3d 241, 245 (3d Cir. 2008) (The modern rule, as expressed

---

[3] Notwithstanding the Eleventh Amendment bar, state sovereign immunity provides an additional basis to dismiss Mr. Bass's state law claims against DCDR and Dakota Street in her official capacity.

[4] Mr. Bass alleges that he is a citizen of Maryland, while Montana Street is a citizen of Pennsylvania. DI 2 at 1-2.

in *Ankenbrandt,* provides "that the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree"); *Griessel v. Mobley*, 554 F. Supp. 2d 597, 601 (M.D.N.C. 2008) (claims involving child custody and support fall within the domestic relations exception to federal court jurisdiction).  Accordingly, we will dismiss any state law claims Mr. Bass seeks to assert against Montana Street for lack of jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, we will grant Mr. Bass leave to proceed *in forma pauperis* and dismiss his complaint.  Mr. Bass's federal claims are dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Mr. Bass's state law claims are dismissed without prejudice.  Mr. Bass will not be given leave to file an amended complaint in federal court because we conclude that amendment would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  An appropriate Order follows dismissing this case.